LINCOLN NATIONAL LIFE INSURANCE COMPANY, Appellant, v.
GEORGE E. MCSPADDEN et al., Cross-petitioners, Appellees.

No. 40490.

NOVEMBER 11, 1930.

*Clyde McFarlin,* for appellant.

*McNeil & Scovel,* for Fullerton Lumber Co., appellee.

*Ed. A. Schmidt,* for other appellees.

STEVENS, J.—Subsequent to the execution of the mortgage in suit to appellant by George E. and Edith R. McSpadden, they conveyed one half of the mortgaged premises, which comprised a farm of 180 acres, by definite description, to the defendant Loyal McSpadden. Thereafter, the said grantee purchased material of

the Fullerton Lumber Company, cross-petitioner and appellee herein, for the purpose of erecting a dwelling house upon his premises. At the time of the commencement of this action, there was a balance due cross-petitioner on the account for material of $698.65, together with interest. As already indicated, the controversy is limited to the issues joined on the cross-petition, in which the establishment of the mechanics' lien as prior to the lien of the mortgage is prayed, together with special execution, and for the sale of the building separate from the real estate, with the right of removal.

Both the relative status of the respective liens and the remedy for their enforcement are fixed by statute. Section 10289, Code, 1927, which relates to priority, provides that:

"Mechanics' liens, including those for additions, repairs, and betterments, shall attach to the building for which the material or labor was furnished or done, in preference to any prior lien, incumbrance, or mortgage upon the land upon which such building was erected or situated."

Section 10290 of the Code of 1927 provides the remedy where the foreclosure of a mechanics' lien is sought, and where an issue of priority is involved, which, so far as material to the present controversy, is as follows:

"* *.* 1. If such material was furnished or labor performed in the construction of an original and independent building commenced after the attaching or execution of such prior lien, incumbrance, or mortgage, the court may, in its discretion, order such building to be sold separately under execution, and the purchaser may remove the same in such reasonable time as the court may fix. If the court shall find that such building should not be sold separately, it shall take an account of and ascertain the separate values of the land, and the building, and order the whole sold, and distribute the proceeds of such sale so as to secure to the prior lien, incumbrance, or mortgage priority upon the land, and to the mechanic's lien priority upon the building. * * *"

Of course, the order of priority fixed by the statute must, unless otherwise provided thereby, prevail in the enforcement of the remedy. It is clear, under the provisions of the foregoing

statute, that, if material is furnished for and used in the erection of a new and independent building which may be severed from the realty and removed without substantial injury or damage to either, the court may, in its discretion, order the same to be sold separately, under special execution, with permission to the purchaser to remove the same. *Luce & Co. v. Curtis,* 77 Iowa 347; *Leach v. Minick,* 106 Iowa 437; *Tower v. Moore,* 104 Iowa 345; *Royal Lbr. Co. v. Hoelzner,* 199 Iowa 24. The law being thus well established, practically the question presented for decision in this case is, in the first instance, largely one of fact. The nature and character of the building in question is well described in the stipulation of the parties as follows:

"It is conceded that the dwelling house referred to above and involved in this controversy is 22 feet by 34 feet, with a ten-foot eave; that the basement has a cement floor, and the walls of the basement are common hollow tile from the bottom of the basement to the grade line, and that from the grade line to the floor of the house itself, the blocks are vitrified hollow tile; that the chimney is a brick chimney extending from the floor of the basement up through the house to the roof; that the house has a porch on the front, underneath which are two piers, constructed from vitrified hollow tile, set on a cement base; that there is a pipeless furnace installed in said house; that the walls of said basement are laid up with mortar joints; that there are five rooms in the house, and another room which appears to be designed for a bath room or closet, but there are no bath-room fixtures, however, in said house, or any piping for bath-room fixtures or for any other water system in the house."

Shortly after the building was erected upon the premises, Loyal McSpadden was, on a voluntary petition, adjudged a bankrupt. The building was isolated and separated from all other buildings, except a small outbuilding, of little value. The excavation for the basement was about 2½ feet in depth, the elevation above the surface being made by the use of the dirt taken from the excavation and the height of the foundation above the same.

The weight of the testimony clearly discloses that the building in question may be removed without substantial damage thereto or to the premises. The tile, when removed, will retain

about 75 per cent of their original value. The cement floor in the basement will, of course, be a total loss. Cross-petitioner's witnesses testified that the chimney could be cut off at the floor and fastened in place so that it would not be damaged in the removal of the building. The testimony also shows that the porch may be so protected that the removal of the building will not work material injury thereto. The house was vacant at the time of the trial, and had been for several months prior thereto. The trial court found that the building could be removed, and the decree made full provision for the sale and removal thereof. In addition, the court required cross-petitioner to restore the premises to their former condition, and to execute a bond in the penal sum of $1,000 to better secure compliance with this part of the decree.

Our attention is directed by appellant to *Crawford-Fayram Lbr. Co. v. Mann,* 203 Iowa 748, in which the court reversed the decree of the lower court granting relief to the materialmen and permitting the removal of the building. This case is clearly distinguishable from the case at bar. In the first place, the mortgage in the *Mann* case was given for the express purpose of procuring funds with which to erect the building therein involved. In the next place, the building was permanent in character, and was improved with plumbing and other fixtures, which made the removal practically impossible without serious injury to it and to the premises on which it was situated. Likewise, *Green v. Saxton,* 196 Iowa 1086, and *Taber Lbr. Co. v. Converse,* 197 Iowa 1287, relied upon by the appellant, are clearly distinguishable from the present case. No evidence as to the market value of the mortgaged premises was offered by either party. Appellant did offer the testimony of an alleged expert, who testified that the removal of the building would impair the value of the land from $2,500 to $3,000. This testimony can be given little or no weight, as the issue must, in the first instance, be determined in harmony with the physical facts.

The finding and decree of the trial court, it seems to us, is clearly right, and in harmony with the statutes cited. The discretion to be exercised by the court in such cases in determining whether permission should or should not be given for the sale and removal of the building, must be exercised in the light of the statute and the facts and circumstances shown in the evidence.

This conclusion makes unnecessary consideration of counsel's contention as to the proper construction to be given Section 10290 as it now appears in the Code. On this question we express no opinion. It follows that the decree must be, and it is,—*Affirmed*.

MORLING, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.