WILLIAM BARTLETT, Appellant, v. WILLIAM MAHLUM *et al.*, Appellees.

1. **Mechanics' Liens:** CONTRACT WITH ONE NOT THE OWNER: HUSBAND'S AGENCY FOR WIFE. Where a husband, holding a lot by contract of purchase in his own name, contracted for the erection of a house thereon, and conducted all the business pertaining thereto, without disclosing any agency, his wife knowing of and acquiescing in all that he did, *held*, that, as to persons claiming mechanics' liens upon the house, the husband must be regarded as the owner of the lot, and the person for whom the house was built, although property belonging to the wife was deeded as consideration for building the house.

2. ———: PRINCIPAL CONTRACTOR OR SUBCONTRACTOR. Where the owner of a lot contracted with H. for the erection of a house thereon, and the plaintiff furnished materials therefor, and charged them to H., and filed a claim for a lien, based upon an agreement with H. as principal contractor, *held*, that he could not afterwards claim that he furnished them under a contract with the owner of the lot, made prior to his agreement with H., and was therefore entitled to a lien as a principal contractor.

3. ———: SUBCONTRACTOR: CONTRACT BETWEEN OWNER AND PRINCIPAL CONTRACTOR: PAYMENT IN ADVANCE: FACTS NOT CONSTITUTING. The owner of a lot contracted with H. to furnish the materials for and erect a house thereon, in consideration of a stock of goods and some money. The plaintiff, as subcontractor, furnished materials to H., but not until after the goods had been turned over and the money paid. But the agreement was that the money and the proceeds of the goods were to be held in trust, to be applied by the trustee in payment of bills incurred in the erection of the house, and this agreement was, in effect, observed. *Held*, that the principal contractor was not paid in full, prior to the furnishing of materials by the plaintiff, in such sense as to deprive the latter of his right to a lien as a subcontractor.

*Appeal from Emmet District Court.*—HON. LOT THOMAS, Judge.

FRIDAY, MAY 19, 1893.

ACTION in equity to establish and foreclose a mechanic's lien on account for materials furnished for the erection of a dwelling house, in lot 5, block 33, town of Estherville. The issues presented on this appeal are between the plaintiff and the defendants as above named. The answer may be summed up as presenting a general denial. The issues will sufficiently appear in the opinion. Decree and judgment was entered against the plaintiff, and in favor of these defendants. The plaintiff appeals.—*Reversed.*

*Soper, Allen & Morling*, for appellant.

*J. G. Myerly*, for appellees.

GIVEN, J.—I. It clearly appears that in the summer of 1890 Elijah Harrie furnished the materials and erected a dwelling house upon said lot 5,

**1. MECHANICS' liens: contract with one not the owner: husband's agency for wife.**

under a contract with one or both of the defendants, and that he contracted for and received materials for said house from the plaintiff. We think it fairly appears that the building contract was with the defendant, William Mahlum. He held the lot by contract of purchase in his own name, made the written contract with Harrie in his own name, and conducted the business throughout in his own name and for himself, without disclosing any agency, or that he was acting for his wife. It is contended that a house and lot belonging to Mrs. Mahlum was deeded as consideration for building the new house. Concede this to be true, yet Mrs. Mahlum knew that her husband was acting and contracting in his own name, and as owner of lot 5, and she at all

times acquiesced therein and consented to what he did. Whatever may be their rights as between themselves, we must hold under the facts that for all the purposes of this case William Mahlum is the owner of said lot, and the person for whom the house was erected. The result must be the same, whether he acted as principal or agent, for Mrs. Mahlum fully authorized and ratified all his acts relating to the transaction.

II.   The appellant's first claim is that he is entitled to a lien as principal contractor, because of an alleged agreement on the part of William Mahlum, by which the plaintiff was induced to furnish said materials.   William Mahlum denies the statements made by the plaintiff, but, conceding that they were made as claimed, we think they fall far short of establishing an agreement between the plaintiff and the defendants for the material in question.

2. ——: principal contractor or subcontractor.

The plaintiff's further claim is that said statements and representations were such that the defendants should be estopped thereby from denying his right to a lien.   It is a sufficient answer to these claims that the plaintiff did not regard what was said as constituting either an agreement or an estoppel.   He did not act or rely thereon; he has never attempted to perfect a lien upon the basis of an agreement with the defendants, but filed a lien based upon an agreement with Harrie, as principal contractor.   It was after this alleged agreement with William Mahlum that the plaintiff contracted with Harrie, furnished and charged the material to Harrie, and filed his claim for a lien based upon his agreement with Harrie.   He is clearly not entitled to a lien as principal contractor, nor are the defendants estopped from denying his right to a lien.

III.   We next inquire as to the plaintiff's right to a lien as a subcontractor.   That he furnished material

3. ——: subcontractor: contract between owner and principal contractor: payment in advance: facts not constituting.

for said house in pursuance of an agreement with the contractor Harrie is not questioned. On December 9, 1890, the plaintiff filed his claim for a lien, based upon a contract with Harrie, showing the last item to have been furnished November 29, 1890. On December 23, 1890, he filed an amendment touching the ownership of said lot 5 that need not be further stated. On December 24, 1890, notice of this claim for a lien was duly served on the defendants. It appears from the face of these documents that the plaintiff is entitled to a lien as claimed, but the defendants assert, as reasons why he is not so entitled, that he has failed to show that there was anything due from them to Harrie at the time the material was furnished; that the claim for a lien was not filed and notice served within thirty days from the date on which the last item of material was furnished; and that the plaintiff has not filed a just and true statement of his account.

The claim that there was nothing due to Harrie when the materials were furnished is based upon the following facts: One Kirk, having a stock of merchandise at Vinton, Iowa, agreed with one Clark to exchange the goods as per invoice for a certain farm. The defendants agreed with Clark to convey to him a certain house and lot in Estherville, where they resided, for said stock of merchandise and two hundred dollars in money. On August 5, 1890, the defendants William Mahlum and Elijah Harrie entered into a written agreement, whereby Mahlum sold to Harrie said one thousand, four hundred dollars' worth of dry goods at invoice price, to be delivered at Estherville, and agreed to pay Harrie two hundred dollars in cash. In consideration of said goods and cash, Harrie agreed to build for said Mahlum on any lot designated in Estherville a dwelling house according to certain specifications,

and to make to said Mahlum a warranty deed to lot 4 block 24, Estherville. Said agreement contains the following:

"Whereas, said first party is to exchange a house and lot for the aforesaid goods and cash, and said goods are to be delivered and the cash paid as soon as they come into the possession of the first party, and the deed for the aforesaid lot 4 to be delivered to the first party at the same time the goods are delivered to the second party; however, it is further understood and agreed that the two hundred dollars cash to be paid by the first party is to be paid to J. G. Myerly, to be by him paid on the bill of lumber for said house to be built by the second party; and it is also further understood and agreed, as a part of this contract, and as one of the essentials hereof, that said dry goods are to be offered for sale by said second party at retail and wholesale as soon as the same are delivered to him, at some suitable place, and, as fast as the same are sold, said sales to be for cash, only, the money therefor is to be turned over J. G. Myerly, and by him applied on the payment of bills for the aforesaid house, outhouse, cistern, well, etc., and to be applied until all bills thereon are fully paid, and the balance turned over to said second party."

It appears that one J. S. Fletcher acted as agent for Clark and Kirk in these transactions, and that at a date which does not appear, but evidently on or after August 5, 1890, an agreement was entered into by Harrie, Mahlum and Fletcher reciting that, whereas Mahlum had that day conveyed his house and lot to Clark in consideration of the two hundred dollars and said goods as per invoice in the hands of Fletcher, the goods to be shipped to Estherville, Harrie agreed to pay the freight, and Mahlum to deposit his deed and abstract in the bank to be delivered to Fletcher when the goods were delivered at the depot in Estherville, and

the two hundred dollars tendered. Said agreement
recites that Harris shall have sixty days in which to
construct the dwelling house for Mahlum, and, if not
finished in that time, he to pay ten dollars per month
for the house conveyed by Mahlum to Clark until the
new house was finished. Said agreement also provides
as follows: "If necessary, said J. S. Fletcher shall
make a loan on the said new house to the amount of
three hundred dollars, to clear off the last payments
for constructing said house." Said lot 5 was designated
as the lot upon which Harrie was to build the new
house, and upon which he did build it, he having
ordered and received lumber and other materials there-
for from the plaintiff. The deed from Mahlum to Clark
was deposited in the bank August 5, and the goods
arrived at Estherville, August 7, 1890, and were put in
charge of a salesman to be sold. The defendants con-
tend that by the deposit of their deed to Clark in the
bank, they made full payment to Harrie for the new
house, and that, as that was before any material was
furnished, the plaintiff is not entitled to a lien. While
it is possible that a failure to carry out any one of these
agreements might have prevented the execution of all
of them, it is not true that the deed to Clark was the
consideration for which Harrie agreed to build the new
house. It is shown by his written agreement with Wil-
liam Mahlum that it was in consideration of the stock
of goods and the two hundred dollars that he
agreed to convey said lot 4, and to erect the house.
Neither the goods nor the two hundred dollars were
delivered to Harrie on August 7, but were held
subject to the agreement that the two hundred dollars
and the proceeds of the sale of the goods should be held
by Mr. Myerly, to be applied in payment of bills in-
curred in erecting the house. It is manifest to our
minds that Harrie was not paid in full before the plain-
tiff furnished materials for the house. The goods were

held for a time as agreed upon, and one hundred and
seventy-five dollars paid on the lumber bill. After some
time Harrie exchanged the goods for land in Kossuth
county, which he deeded to Myerly in trust, as defend-
ant's claim, to secure them against a failure to complete
the house, but we think it was to indemnify them
against mechanics' liens. The evidence shows that these
defendants very properly regarded themselves as having
a right to insist that the goods should be held and the
proceeds applied as agreed upon in their written agree-
ments.

IV.    There is a conflict in the evidence as to when
the last item of material was furnished by the plaintiff.
We think, however, that the decided preponderance is
in favor of the conclusion that it was on the twenty-
ninth day of November, 1890, less than thirty days
before the plaintiff's statement and amended statement
for a mechanic's lien were filed and notice served.

The plaintiff agreed with Harrie to allow a certain
discount on part of the materials furnished in his state-
ment for a lien. The defendants contend that for this
reason the statement filed is not a just and true state-
ment of his account as required by statute. Whether
plaintiff was bound to allow any discount we do not
determine. It is clear, however, that he was not bound
to do so except upon that part of the account upon
which cash was paid as agreed. This he did, and his
statement of his account was just and true.

Our conclusion is that the decree of the district
court dismissing plaintiff's petition must be reversed.
It does not appear whether any issues were joined by
the defendants other than William and Agnes Mahlum,
or what judgment was entered as to them. The case
will be remanded for decree in conformity with this
opinion, and for such judgments and decrees as may be
proper and necessary as to said other defendants.
REVERSED.